IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02963-RM-MLC

MALIK M. HASAN, M.D., and
SEEME G. HASAN,

      Plaintiffs,

v.

AIG PROPERTY CASUALTY COMPANY, a Pennsylvania corporation,

      Defendant.

---

## RECOMMENDATION TO DENY MOTION FOR LEAVE TO AMEND

---

Magistrate Judge Mark L. Carman

This case comes before the court on the referred motion of Plaintiffs Malik M. Hasan, M.D. and Seeme G. Hasan ("Plaintiffs") to amend their complaint. Doc. 41 (referred to hereafter as the "Motion"). Defendant AIG Property Casualty Company ("AIG") opposes. Doc. 43. Plaintiffs have replied in support of their motion. Doc. 44. For the reasons that follow, the court RECOMMENDS denying the motion.

### I. BACKGROUND

Plaintiffs are suing their insurer Defendant regarding Plaintiffs' claim under a "Private Collections Insurance Policy." Under the Final Pretrial Order entered December 12, 2017, Plaintiffs

> assert[] claims for (i) breach of express contract, (ii) breaches of fiduciary duty, (iii) breaches of implied covenant of good faith and fair dealing, (iv) tort of bad faith, and (v) violation of C.R.S. §10-3-1115. Plaintiffs seek recovery of compensatory damages, special damages, consequential damages, statutory damages, attorneys' fees and costs of suit."

1

Doc. 38 (Final Pretrial Order) at 4. The deadlines for discovery and dispositive motions have passed. The case is set for a five-day jury trial before Judge Raymond P. Moore to begin October 1, 2018. Doc. 36 (Order Setting Case For Trial). Judge Moore will hold a trial preparation conference on August 31, 2018, and 60 days prior to that conference (July 2, 2018), motions to exclude expert testimony are due. *Id.* Currently, neither side has designated expert witnesses. Final Pretrial Order at 14.

On January 29, 2018, Plaintiffs filed their motion for leave to file amended complaint. Doc. 41. They assert

> [t]he litigation dispute arises out of substantial losses (in excess of $1.8 million) sustained by the Hasans in connection with the Hasans' purchases of fine wine from Premier Cru, a wine merchant that operated from Berkeley, California. When Premier Cru failed to deliver substantial wines that had been ordered and paid for in full, the Hasans timely lodged claims under their AIG Private Collection Insurance Policy ( the "Policy"), and their AIG homeowners insurance policy. AIG denied all coverage under the Policy, and paid only a modest amount under the homeowners coverage ($62,500).

Motion at 1-2. Plaintiffs have not, nor propose to bring a claim for breach of the referenced homeowners policy; the parties' exhibit lists reflect they have settled Plaintiffs' claim under the homeowners policy outside this case. *See* Final Pretrial Order at Docs. 38-1, 38-2 (Pl. Ex. 56; Def. Ex. A-4).

Plaintiffs seek to amend their complaint regarding Defendant's nonrenewal of the homeowners and Private Collections[1] policies with Plaintiffs.

> On or about January 11, 2018, AIG prepared Notices of Nonrenewal of the Hasans' coverage under the AIG insurance policies (these were received by the Hasans several days later). The AIG insurance coverage for the Hasans will expire on February 18, 2018. The non-renewal will cause the Hasans to incur

---

[1] The notices refer to a homeowners' policy and an "inland marine floater" policy. From the parties' briefing, the court assumes the latter refers to the Private Collections policy. It is unclear whether Plaintiffs still have other active policies with AIG; in their reply, Plaintiffs refer to a past claim on an auto policy without clarifying whether it is still active.

2

substantial additional losses associated with replacing (if possible) the insurance coverage that had been provided by AIG.

Motion at 2 ¶ 6. Plaintiffs attach the nonrenewal notices (doc. 41-2, hereafter the "Notices"); the documents state "[t]he reason for nonrenewal is due to losses and multiple late payments." *Id.* Each Notice identifies the dates that Defendant sent late payment notices and paid losses or expenses on the respective policies.

Plaintiffs attach their proposed amended complaint (doc. 41-1), but do not provide a redline version.[2] They apparently propose to add new Paragraphs 33-35, alleging AIG's decision to not renew their policies, and a new fifth claim for relief for the "tort of bad faith nonrenewal of insurance." Doc. 41-1 at 12. Plaintiffs summarize the new claim:

> The decision not to renew the Hasans' insurance coverage was plainly retaliatory, and further evidences AIG's bad faith handling of the Hasans' insurance claims. Notices of Nonrenewal specifically identify and link: (i) the loss and expenses paid under the fraud endorsement to the AIG homeowners' policy ($72,119.60), and (ii) the open loss expenses paid to defend the Hasans' claim under the Policy ($158,812.82), as bases for the nonrenewal decision.

Motion at 2-3 ¶ 7.

## II.  ANALYSIS

*A.  Legal Standards Applicable to the Motion*

The "Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein." *Id.* at 15-16. By its terms, amending the Final Pretrial Order is appropriate only to "prevent manifest injustice." *See also* Fed. R. Civ. P. 16(e) (setting the same standard).

---

[2] The court's discussion of the proposed amendment is based on the parties' arguments and the court's informal comparison of the original and proposed amended complaints. *See, e.g., Dakota Station II Condo. Ass'n, Inc. v. Auto-Owners Ins. Co.*, No. 14-cv-2839-RM-NYW, 2015 WL 6591888, at *1 n.1 (D. Colo. Oct. 30, 2015).

> Once formulated, pretrial orders should not be changed lightly; but total inflexibility is undesirable. ... The exact words used to describe the standard for amending the pretrial order probably are less important than the meaning given them in practice. ... [T]he words "to prevent manifest injustice" ... adequately describe the restraint the trial judge should exercise.

1983 Advisory Comm. Note to Fed. R. Civ. P. 16(e).

> The party moving for such modification bears the burden of proving that manifest injustice will result absent the amendment. The Tenth Circuit..., when reviewing a decision ... to deny a request to amend a Final Pretrial Order ... consider[s]: (i) the extent of prejudice or surprise to the nonmoving party if the amendment were permitted; (ii) the ability of that party to cure any prejudice; (iii) disruption to the litigation by inclusion of the new issue; and (iv) bad faith by the party seeking to modify the order.

*Scavetta v. King Soopers, Inc.*, No. 10-cv-02986-WJM-KLM, 2013 WL 2896895, at *1 (D. Colo. June 13, 2013) (internal citations, quotation marks and note omitted, citing *inter alia Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208–10 (10th Cir. 2002); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 & n.10 (10th Cir. 2000)). "[T]he timing of the motion in relation to the commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise." *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1117 (10th Cir. 2003).[3]

In practice, courts within the Tenth Circuit tend to find the *Koch* factors favor amendments that are (a) filed before trial has begun or is imminent, (b) do not seek to change the movant's theory of its case after discovery has closed, and (c) do not seek to avoid prior rulings or otherwise show bad faith by the movant. For instance in *Davey*, the court found abuse of discretion in the district court's denial of a motion to add an affirmative defense that was made possible by a Tenth Circuit case decided after the pretrial order. The plaintiff could have sought

---

[3] The Tenth Circuit applies these factors to assess an abuse of discretion, but district courts are not required to explicitly address each *Koch* factor. *Equal Employment Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, No. 13-cv-02340-CMA-KMT, 2016 WL 1168481, at *2 n.1 (D. Colo. Mar. 23, 2016); *Scavetta*, 2013 WL 2896895 at *2.

4

a continuance of the impending trial to cure the prejudice. *Davey*, 301 F.3d at 1211-1212. The Tenth Circuit analyzed *Koch's* "disruption" factor as regarding disruption of an ongoing trial, not merely disruption of the current schedule. *Id. See also Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011) (abuse of discretion to not permit plaintiff to obtain substitute expert where trial had already been vacated for other reasons); *Palace Expl.*, 316 F.3d at 1117–18 (abuse of discretion in denying addition of claim asserted seventeen days before trial; defendant could have sought continuance); *Thomas v. Am. Family Ins. Co.*, No. 14-cv-2819-PAB-NYW, 2016 WL 614467, at *3 (D. Colo. Feb. 16, 2016) (allowing amendment to add a report published after the final pretrial order, on which the movant's expert wished to rely; there was sufficient time for the opposing party to conduct discovery before trial); *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-cv-01511-WYD-BNB, 2016 WL 7868814, at *2–3 (D. Colo. June 29, 2016) (allowing amendment in part to permit removal of a stipulation based on recent discovery, but denying amendments that were potentially attempts "to evade my previous rulings"); *Rush v. Speedway Buick Pontiac GMC, Inc.*, 525 F. Supp. 2d 1265, 1280 (D. Kan. 2007) (allowing amendment to add a defense because it would "ensure ... full and fair litigation" and trial was "still more than one month away").

Cases denying amendment of a final pretrial order most frequently involve motions to amend that were filed within days of or during trial, or motions that sought a sea change in the party's theories. *See, e.g., Monfore v. Phillips*, 778 F.3d 849, 852 (10th Cir. 2015) (motion to amend was filed only days before trial and changed the plaintiff's theory of the case); *Koch*, 203 F.3d at 1223 (district court appropriately denied plaintiff's attempt to amend final pretrial order by introduction of evidence during trial); *Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, 639 F. App'x 550, 557 (10th Cir. 2016) (proposed amendment after discovery would entirely

5

change plaintiff's theory of damages, no mention of newly discovered evidence or any other good reason for the plaintiff's late change of mind); *Canales v. Principi*, 220 F.R.D. 627, 629 (D. Colo. 2004) (denying plaintiff's request to amend to add expert in large part because trial was two weeks away); *Scavetta*, 2013 WL 2896895 (denying motion to add defense twelve days before trial).

However, in this case the requested amendment is essentially a request to file a supplemental pleading.[4] The court thus treats the motion as subject to both Rule 16(e) and Rule 15(d)'s standards; if Plaintiffs meet Rule 16(e)'s standards, the court then considers whether they have also met the standard for supplemental pleadings. *Cf., Perez v. Denver Fire Dep't*, – F. App'x –, No. 17-1128, 2018 WL 739380, at *3 (10th Cir. Feb. 7, 2018) (when a scheduling order deadline has passed, the movant must first satisfy Rule 16 before the court considers whether Rule 15 requirements are also met).

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

> A motion to amend under Rule 15(d) is addressed to the sound discretion of the court, and leave to serve a supplemental pleading should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants.

*Sw. Nurseries. LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1256 (D. Colo. 2003) (internal quotation marks omitted, citing *inter alia Walker v. United Parcel Service, Inc.*, 240

---

[4] This is true despite neither side citing either Rule 16(e) or 15(d); they instead brief the standard for amending a pleading under Rule 15(a), which is to be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant notes the Final Pretrial Order's language limiting amendment to the prevention of manifest injustice, but it briefs only the Rule 15(a) standard. "[T]he former standard is more stringent than the latter," *Scavetta*, 2013 WL 2896895 at *2, but the *Koch* factors and Rule 15(d) overlap extensively with the Rule 15(a) issues that the parties briefed. The court will not require further briefing.

F.3d 1268, 1278 (10th Cir. 2001)); *see also Predator Int'l. Inc. v. Gamo Outdoor USA, Inc.,* 793 F.3d 1177, 1186–87 (10th Cir. 2015).

"The court should apply the same standard for exercising its discretion under Rule 15(d) as it does for deciding a motion under Rule 15(a)." *Id.* "While Fed. R. Civ. P. 15(a) requires that leave to amend be freely given, that requirement does not apply where an amendment obviously would be futile." *Southwest Nurseries*, 266 F. Supp. 2d at 1256 (citing *T.V. Commc'n Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992)). A motion to amend or supplement a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir.1999). A claim is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ... The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft*, 556 U.S. at 678 (quoting *Twombly*). In the Tenth Circuit, "[t]he *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Pueblo of Jemez v. United States,* 790 F.3d 1143, 1172 (10th Cir. 2015).

7

B.  *Do Plaintiffs Meet the Rule 16(e) Koch Factors?*

As noted above, the court begins by analyzing whether Plaintiffs' request meets the Rule 16(e) *Koch* factors to prevent manifest injustice. Defendant argues it would be unduly prejudiced if Plaintiffs add the bad faith claim regarding non-renewal. Discovery and dispositive motions deadlines have passed; Defendant has a fully-briefed summary judgment motion pending on all claims; Plaintiffs did not directly address Defendant's arguments therein against the existing bad faith claims; and the new claim would require additional discovery, including the reopening of depositions.

Defendant places responsibility for this situation on Plaintiffs' shoulders, arguing it is all the result of Plaintiffs' "most recent failure to timely remit insurance premiums which generated a late payment notice on 2/21/2017." Doc. 43 (response) at 3. Defendant argues an unspecified Colorado statute requires only 30 days' notice of non-renewal. Defendant does not explain whether it could have given earlier notice or why that would not be justified. Plaintiffs view Defendant's timing in its worst possible light, arguing Defendant strategically timed the Notices to occur after the Final Pretrial Order. The court does not decide which party's view is more correct regarding the timing of the nonrenewal Notices. What matters at present for purposes of Rule 16(e) is that Defendant does not assert Plaintiffs acted in bad faith by filing the motion to amend after the Final Pretrial Order.

Nor could Defendant be surprised by Plaintiffs' motion and proposed new claim. It is undisputed that Defendant sent the nonrenewal Notices after the final pretrial order was entered; it is also undisputed that the nonrenewal has at least some factual nexus with Plaintiffs' existing claims – Defendant asserts the expenses it has paid to litigate this case as one basis for non-renewal. Doc. 41-2. Although Defendant is correct that the new claim involves more than just

8

the Private Collections Insurance Policy, both sides recognize the new claim asserts bad faith retaliation for Plaintiffs having brought the claims in this action.

The amendment would cause both sides to incur additional costs in the form of additional written discovery and the reopening of depositions. Plaintiffs suggest it may also make expert witnesses necessary. But neither side argues the discovery would be extensive, and in any case "extra expense alone is not the type of prejudice contemplated." *Rimbert*, 647 F.3d at 1255. Even if the new claim causes either party to deem an expert witness necessary, almost two months remain in which to complete the fact discovery and expert disclosures before motions to exclude expert testimony are due. Moreover, if this is insufficient time, Defendant could likely cure any prejudice by seeking a continuance of the trial from Judge Moore.

Defendant also argues it would be prejudiced because (a) another round of summary judgment briefing will be necessary because based on the facts asserted in the Notices, the new claim is too "speculative" to reach a jury, and (b) if Judge Moore grants the existing motion for summary judgment, the new claim would still remain. The first argument is not really a question of unfair prejudice, but whether the claim is subject to dismissal – an issue the court addresses *infra*. Defendant's prejudice argument is not persuasive. After discovery (or if Judge Moore grants the pending motion for summary judgment), Defendant could seek leave from Judge Moore to file a second motion under his practice standards. In short, the court finds Plaintiffs have met the *Koch* factors for amending a final pretrial order. However, this does not end the inquiry.

C. *Do Plaintiffs Meet the Standard for Supplementing Their Pleading?*

If Plaintiffs' proposed claim would be subject to dismissal, the amendment is futile and properly denied. Defendant raises this issue, albeit focused exclusively on facts and devoid of citation to substantive law.

9

Plaintiffs claim bad faith non-renewal of insurance policies. The tort of bad faith requires Plaintiffs to allege that "(i) [AIG] engaged in unreasonable conduct with regard to the parties' insurance relationship; (ii) ... [AIG] either knew of the unreasonableness of its conduct or acted with reckless disregard of such unreasonableness; and (iii) ... Plaintiffs were injured as a result." *Johnson v. Liberty Mut. Fire Ins. Co.*, 653 F. Supp. 2d 1133, 1145 (D. Colo. 2009) (dismissing claim of bad faith failure to preserve evidence for insured), *aff'd*, 648 F.3d 1162 (10th Cir. 2011). Under Colorado law, insurers have no obligation to renew policies unless a policy expressly so provides. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1363 (Colo. 1993). Nevertheless, Colorado recognizes an insurer's duty to not engage in bad faith conduct toward its insured extends to all aspects of that relationship, including renewals. *Id.* See also *Johnson*, 653 F. Supp. 2d at 1144; *Barrera v. Am. Nat'l Prop. & Cas. Co.*, No. 12-cv-00413-WYD-MEH, 2013 WL 5426349, at *15 (D. Colo. Sept. 27, 2013) (claim alleging bad faith failure to reinstate insurance).

In *Ballow*, the insurer induced physicians to purchase "claims-made" malpractice coverage instead of "occurrence" insurance; it did so by misrepresenting to the physicians that it would either renew the policies at set rates or would provide "tail" coverage (unnecessary after an occurrence policy, but necessary to avoid a gap after a claims-made policy) at set rates. 875 P.2d at 1358-59, 1363. To induce the physicians to renew their claims-made policies, the insurer further misrepresented that it was in the Colorado market for independent physician insurance for the long haul. Shortly after they renewed, PHICO informed the physicians that it would not renew the policies again, was leaving that market, and required payment of higher rates for tail coverage. *Id.* The misrepresentations and unique vulnerability from having purchased "claims made" insurance amply showed that the insurer acted improperly in an objectively unreasonable

fashion in non-renewing the policies, was aware that it was acting unreasonably, and caused actual injury to the plaintiffs.

Here, in contrast, Plaintiffs allege impropriety in only conclusory fashion. Plaintiffs allege the nonrenewal is retaliatory for Plaintiffs pursuing this litigation (Doc. 41-1 ¶¶ 35, 67) because (a) the Notices refer to the "expenses incurred defending the Policy claim" in this litigation and (b) "it cannot be said that AIG experienced a negative claims history in respect of the insurance coverage that it has provided to the Hasans." *Id.* ¶ 34. But Plaintiffs do not allege the non-renewed policies contain promises to renew or any restrictions on Defendant's right to not renew.[5] Plaintiffs do not attach a copy of the homeowners policy to the proposed amended complaint, but they do attach the Private Collections Policy. That policy provides AIG "*may* offer to continue this policy for a renewal period, at the current or revised premium....," and "[i]f we elect not to renew this policy, we shall mail ... notice of non-renewal...." Doc. 41-1 at p. 35 of 50, § V ¶¶ B, Y (emphasis added). The Notices also refer to more reasons for nonrenewal than just the expenses AIG has incurred in this litigation: Plaintiffs' late payments of premiums and a claim paid on the homeowners policy as additional reasons for nonrenewal. Doc. 41-2. In their reply, Plaintiffs assert they had a course of conduct in which Plaintiffs regularly paid the annual premiums after negotiations of coverage. But they do not allege those facts in the amended complaint, and in their briefs, Plaintiffs do not cite any authority that it would be unreasonable for an insurer to consider its history with an insured – such as late premium payments and claims paid – in determining whether to renew a policy.

In their motion, Plaintiffs suggest the timing of the Notices shows bad faith because AIG waited until after the Final Pretrial Order. However, this is not alleged in the amended

---

[5] Treating the motion as one under Rule 15, the court considers documents attached to the amended complaint as part of the allegations. *Cf., Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).

11

complaint. The Private Collections Policy provides: "If we elect not to renew this policy, we shall mail to you ... written notice of non-renewal not less than thirty (30) days before the end of the Policy Period." *Id.* at p. 37 of 50 § V ¶ Y. In their reply, Plaintiffs also do not dispute that a Colorado statute governed the notice period for both policies and provided 30 days' notice.

The proposed allegations – including the terms of the Private Collections Policy and the Notices –do not suffice to nudge the claim across the line from conceivable to plausible. *Twombly,* 550 U.S. at 570. Defendant's conduct is at least equally consistent with the terms of the Private Collections Policy and the Colorado insurance code as with a deliberate attempt to prevent Plaintiffs from raising a claim here regarding nonrenewal. Thus, the amended complaint's assertions that AIG acted unreasonably in nonrenewal of the Plaintiffs' policies are too conclusory to support a bad faith claim.

In addition, Plaintiffs' allegations of injury from the non-renewals are also too conclusory. Plaintiffs allege only that they "will incur substantial additional losses (in the form of increased insurance premium expense and otherwise)." Doc. 41-1 ¶ 35. Plaintiffs do not allege any facts from which to infer that the *possibility* of paying higher premiums elsewhere constitutes an actual injury[6]. In short, the court concludes that Plaintiffs' proposed amendment is futile because as pled, the new claim is subject to dismissal for failing to allege facts making the claim plausible.

### III. CONCLUSION

For each of the foregoing reasons, the court RECOMMENDS denying the motion to amend.

---

[6] The AIG policy allows for revised premiums upon renewal. AIG was not obligated to offer the policy at the previous premium, and thus it is conclusionary that Plaintiff's will incur additional costs to replace the insurance.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116,

1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: May 8th, 2018.

BY THE COURT:

Mark L. Carman
United States Magistrate Judge