# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02963-RM-MLC

MALIK M. HASAN, M.D., and
SEEME G. HASAN,

       Plaintiffs,

v.

AIG PROPERTY CASUALTY COMPANY, a Pennsylvania corporation,

       Defendant.

---

## RECOMMENDATION TO DENY RENEWED MOTION FOR LEAVE TO AMEND

---

Magistrate Judge Mark L. Carman

       This case comes before the court on the renewed motion of Plaintiffs Malik M. Hasan, M.D. and Seeme G. Hasan ("Plaintiffs") to amend their complaint. Doc. 47. Plaintiffs revise a proposed claim for bad faith non-renewal of insurance that the court recently found would be futile for lack of facts to support unreasonable conduct and damages. Doc. 46 (Amended Recommendation).[1] Defendant AIG Property Casualty Company ("AIG") argues the revised claim suffers the same flaws and therefore remains futile. Doc. 50. Plaintiffs replied in support of their renewed motion. Doc. 52. For the reasons that follow, the court concludes Plaintiffs' revision adds detail without a difference for purposes of plausibility. The court accordingly recommends denying the renewed motion.

---

[1] Plaintiffs did not object to the Recommendation, and Judge Raymond P. Moore has adopted it. Doc. 51.

1

## I. BACKGROUND

The court recited the alleged facts and claims in the Recommendation of May 8, 2018. Doc. 46. The Final Pretrial Order was entered December 12, 2017, and the case is set for trial to begin October 1, 2018. In their first motion to amend, Plaintiffs sought to add a claim for bad faith non-renewal of both their private collections insurance policy and homeowners' insurance policy. Plaintiffs now limit the new claim to the non-renewal of their homeowners' insurance. Doc. 47-1 (Revised Proposed Amended Complaint) ¶¶ 34-43 and Fifth Claim for Relief.[2]

Relative to their first proposed amendment, Plaintiffs add allegations that the parties had a prior course of conduct that Plaintiffs negotiated premiums beyond the expiration date of their policies and then paid the agreed-upon premiums. *Id.* ¶¶ 36-37. Plaintiffs note among other things "[t]his annual premium negotiation was predicated upon the properties to be covered, the amount of coverage, the loss history and other relevant factors." *Id.* ¶ 36. Plaintiffs continue to propose without significant change that they

> have been AIG insurance customers since 2005. Over the past five years, the Hasans have paid AIG $624,245 in insurance premiums under various insurance policies issued by AIG During that same period, AIG paid the Hasans only $120,069.86 in covered losses (more than half of which was the $62,500 paid to the Hasans under a "Fraud SafeGuard Coverage" endorsement to the AIG Homeowners Policy[3] in connection with the Hasans' losses which are the subject of the captioned litigation). Accordingly, it cannot be said that AIG experienced a negative claims history in respect of the insurance coverage that it has provided to the Hasans.

---

[2] Plaintiffs mention the non-renewal of the private collections policy, but they do not bring a claim regarding it. Doc. 47-1 at 9, n. 1.
[3] Plaintiffs' allegations refer to a singular homeowners' policy, but eight declaration pages with eight different policy numbers are attached. Doc. 47-2. Plaintiffs attach only one notice of nonrenewal for the homeowners' policy, referring to a single policy number which in turn identifies only a property in Pueblo. *Id.* at 9, 64. The court need not resolve whether Plaintiffs had one policy covering multiple properties, or instead eight policies each covering only the property identified in its declaration page.

2

Doc. 47-1 ¶ 38. Again relative to their first motion to amend, Plaintiffs also continue to allege AIG sent "retaliatory Notices of Nonrenewal of the Homeowners Insurance (the 'Non-Renewal Notices'). The Non-Renewal Notices referenced AIG's payments to the Hasans under the Homeowners Insurance and the expenses incurred defending the claims in the captioned litigation brought by the Hasans." *Id.* ¶ 39. Copies of the Notices are attached to the proposed amended complaint. Doc. 47-2 at 64-65 of 65.[4]

In their revision, Plaintiffs add the following allegations regarding AIG's non-renewal of the homeowners' policy:

> The reasons for non-renewal set forth in the Non-Renewal Notices were sham and pretext. For example, the Non-Renewal Notices recite as a basis the Hasans' loss history but AIG elected not to renew the homeowners insurance coverage with respect of multiple properties and structures for which no losses (or only de minimus losses) had ever been claimed by the Hasans.
> Following receipt of the Non-Renewal Notices the Hasans reasonably requested that AIG continue for 30 days the homeowners insurance coverage to enable them to locate and procure replacement coverage from another insurer. That request was denied by AIG.
> Predictably, AIG's non-renewal of the homeowners insurance proximately caused material injury, damages and losses to the Hasans. Failure to keep the Hasans' residential properties continuously insured is a material default under lien instruments encumbering the Hasans' properties. Accordingly, the Hasans were required to seek replacement insurance coverage from other insurers. The only replacement insurance that proved to be available is materially inferior. That replacement insurance coverage is materially more expensive and provides materially less coverage than the AIG Homeowners Insurance which was not renewed by AIG in retaliation of the Hasans initiation of the captioned litigation.

Doc. 47-1 ¶¶ 40-42. In alleging future harm, Plaintiffs continue to assert increased insurance premium expense and add "inferior insurance coverage." *Id.* ¶ 43. The proposed fifth claim for relief now specifies the claim regards only the homeowners' insurance policy.

---

[4] The court considers documents attached to the amended complaint as part of the allegations. *Cf., Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010).

## II. ANALYSIS

*A. Legal Standards Applicable to the Motion*

Under Federal Rule of Civil Procedure 16(e), the court may amend the Final Pretrial Order "to prevent manifest injustice." Little has changed with respect to the court's May 8 analysis under that standard. If the court were to grant the amendment, the schedule would be tighter but it appears the parties could still meet it – except if a dispositive motion were filed regarding the new claim. The court will assume Plaintiffs still meet the Rule 16 standard for preventing manifest injustice.

Plaintiffs' revised proposed amendment is a supplemental pleading, which "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The court "should apply the same standard for exercising its discretion under Rule 15(d) as it does for deciding a motion under Rule 15(a)." *Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1256 (D. Colo. 2003). "While Fed. R. Civ. P. 15(a) requires that leave to amend be freely given, that requirement does not apply where an amendment obviously would be futile." *Id.*

An amendment or supplement is futile if, notwithstanding the amendment, the claim "would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). A claim is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." … A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft*, 556 U.S. at 678 (quoting *Twombly*). In the Tenth Circuit, "[t]he *Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Pueblo of Jemez v. United States,* 790 F.3d 1143, 1172 (10th Cir. 2015).

B.   *Do Plaintiffs Meet the Standard for Supplementing Their Pleading?*

Defendant argues even with Plaintiffs' revisions, the proposed bad faith non-renewal claim remains subject to dismissal as futile. The tort of bad faith requires Plaintiffs to allege "(i) [AIG] engaged in unreasonable conduct with regard to the parties' insurance relationship; (ii) … [AIG] either knew of the unreasonableness of its conduct or acted with reckless disregard of such unreasonableness; and (iii) … Plaintiffs were injured as a result." *Johnson v. Liberty Mut. Fire Ins. Co.,* 653 F. Supp. 2d 1133, 1145 (D. Colo. 2009) (dismissing claim of bad faith failure to preserve evidence for insured), *aff'd,* 648 F.3d 1162 (10th Cir. 2011). "The reasonableness of an insurer's conduct is 'determined objectively, based on proof of industry standards.'" *Baker v. Allied Prop. & Cas. Ins. Co.,* 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013), *as amended* (June 12, 2013) (citing *Goodson v. Am. Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 415 (Colo. 2004)). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* at 1108 (citing *Vaccaro v. Am. Family Ins. Group,* 275 P.3d 750, 760 (Colo. App. 2012)).

Under Colorado law, insurers have no obligation to renew policies unless a policy expressly so provides. *Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1363 (Colo. 1993).

5

Nevertheless, Colorado recognizes an insurer's duty to not engage in bad faith conduct toward its insured extends to all aspects of that relationship, including renewals. *Id. See also Johnson,* 653 F. Supp. 2d at 1144; *Barrera v. Am. Nat'l Prop. & Cas. Co.,* No. 12-cv-00413-WYD-MEH, 2013 WL 5426349, at *15 (D. Colo. Sept. 27, 2013) (claim alleging bad faith failure to reinstate insurance).

As the court noted on Plaintiffs' first motion, in *Ballow* the insurer induced physicians to purchase "claims-made" malpractice coverage instead of "occurrence" insurance; it did so by misrepresenting to the physicians that it would either renew the policies at set rates or would provide "tail" coverage (unnecessary after an occurrence policy, but necessary to avoid a gap after a claims-made policy) at set rates. 875 P.2d at 1358-59, 1363. To induce the physicians to renew their claims-made policies, the insurer further misrepresented that it was in the Colorado market for independent physician insurance for the long haul. Shortly after they renewed, PHICO informed the physicians that it would not renew the policies again, was leaving that market, and required payment of higher rates for tail coverage. *Id.* The misrepresentations and unique vulnerability from having purchased "claims made" insurance amply showed that the insurer acted improperly in an objectively unreasonable fashion in non-renewing the policies, was aware that it was acting unreasonably, and caused actual injury to the plaintiffs.

Here Plaintiffs do not allege facts to plausibly support a bad faith non-renewal claim. Plaintiffs do not address the policy's terms regarding renewal. The Homeowners Amendatory Endorsement Colorado attached to the proposed amended complaint provides:

> If we elect not to renew this policy, we shall mail to you at the last address known to us written notice of nonrenewal not less than thirty (30) days before the end of the Policy Period as stated on the Declarations Page. This nonrenewal notice, together with our reason for nonrenewal, will be mailed to you by first class mail at your last address known by us.

Doc. 47-2 at 51 of 65.  The Colorado Homeowner's Renter's and Condominium Owner's Disclosure Form (apparently applicable to some but not all of Plaintiffs' properties formerly insured with AIG) provides in relevant part:

> Your company may choose to cancel or nonrenew your policy.  If your policy is cancelled or nonrenewed, you will receive advance notice.  Some examples of reasons for cancellation and nonrenewal include, but are not limited to:
> 1. Failure to pay your premium when it is due[.]

Doc. 47-2 at 54 of 65.  Plaintiffs do not allege AIG failed to comply with these provisions.  Nor do they allege AIG failed to comply with C.R.S. § 10-4-110.7(3), the statute requiring 30 days' notice of non-renewal for homeowners' insurance.

Nonetheless, Plaintiffs allege AIG's non-renewal is knowing retaliation for Plaintiffs' initiation of this litigation.  Plaintiffs allege AIG's stated reasons for non-renewing are "sham and pretext" because:

(a) The Non-Renewal Notices refer to the "expenses incurred defending the Policy claim" of almost $159,000 in this litigation (see doc. 47-2 at p. 65);

(b) AIG has paid out over $120,000 in claims to the Hasans (doc. 47-1 ¶ 38) including over $72,000 in losses and expenses paid under the homeowners' policy for the fraud they assert in this litigation (doc. 47-2 at p. 64), but Plaintiffs did not have "a negative claims history" with AIG because they paid over $624,000 in premiums in the last five years;

(c) Most of the properties Plaintiffs formerly insured with AIG had either no or *de minimis* claims, but AIG non-renewed as to all of the properties (doc. 47-1 ¶¶ 38, 40);

(d) The Non-Renewal Notices refer to late payments of premiums as a reason for non-renewal, but this is contrary to the parties' established course of conduct in which Plaintiffs regularly paid the annual premiums late, after negotiations; and

(e) AIG declined to extend the policy for an extra 30 days upon Plaintiffs' request.

Based on Plaintiffs' other allegations, the terms of the policy, and the history of this case, these allegations either do not support the first element of the claim – that AIG acted unreasonably in not renewing the homeowners' policy – or at the least, do not support the second element – that AIG knew or should have known it was acting unreasonably.

First, if AIG were retaliating because Plaintiffs initiated this litigation (doc. 47-1 ¶ 39), AIG could have non-renewed a year before it did. Plaintiffs originally filed their action in state court and served AIG on November 14, 2016. Doc. 1 (notice of removal) ¶ 5. AIG had almost three months in which to give notice of non-renewal to Plaintiffs if it had wished to retaliate for their initiation of this case.[5] AIG's decision a year later to not renew the homeowners' policy is at least equally (if not more) consistent with a lawful business decision that insuring Plaintiffs' properties has come to cost more in the past year than AIG deems in its interest, as it is with unlawful retaliation for Plaintiffs' year-long exercise of their right to petition. *See, e.g., Twombly,* 550 U.S. at 554, 557 (allegations are insufficient if merely consistent with unlawful conduct, not suggestive of it; alleging conduct as unlawful when it is "just as much in line with a wide swath of rational and competitive business strategy" does not state a claim); *Ashcroft,* 556 U.S. at 681 (allegations were consistent with unlawful discriminatory purpose, but "given more likely explanations, they do not plausibly establish this purpose"); *Gowadia v. Stearns,* 596 F. App'x 667, 671 (10th Cir. 2014) (affirming dismissal of claim where the allegations were equally consistent with lawful conduct as with unlawful). The same is true of AIG's decision to not extend the policy for another 30 days. AIG's decision to not extend could be consistent with retaliation, but it is equally (or more) consistent with a lawful decision to not insure Plaintiffs beyond the policy period upon which they had agreed.

---

[5] The policy period began February 18, 2017 – three months after Plaintiffs served AIG in this case. *See, e.g.,* Doc. 47-2 at 7 of 65.

8

Second, regarding the claims AIG paid and the expenses it incurred in this litigation, Plaintiffs themselves recognize the "loss history" was relevant to negotiating renewal premiums. Doc. 47-1 ¶ 36. The court reasonably infers that Plaintiffs also understand the loss history to be relevant to non-renewal. Construing Plaintiffs' claim in the light most favorable to them, they claim the aggregated premiums they paid on all policies in the last 5 years (or perhaps since AIG began insuring them in 2005) so overwhelm the claims and expenses AIG incurred in the last year, those claims and expenses are not a reasonable basis for non-renewal. *I.e.,* Plaintiffs claim that in order to be reasonable, AIG had to consider their premiums vs. claims/expenses on an aggregated, cumulative basis. On the other hand, Plaintiffs also allege that to be reasonable, AIG had to separately analyze the premiums vs. claims separately as to each insured property, because several properties have had no claims or only *de minimis* claims. Taken together, Plaintiffs seem to assume it was objectively unreasonable for AIG to analyze the claims and expense history in any manner other than what would be most advantageous to Plaintiffs. But Plaintiffs do not cite any legal authority, industry standard, agreement or other facts that make this theory plausible. Plaintiffs cite, for instance, no statutes or agreement that restricts how AIG would measure and weigh its loss and expense history for purposes of renewal decisions.

Third, the fact that AIG broke with its history of accepting Plaintiffs' premiums after their due dates is likewise only consistent with, not suggestive of, retaliation. Plaintiffs argue "[i]t was not until the Hasans asserted claims in the captioned litigation that Defendant drastically changed its approach (doc. 52 (reply) at 6, citing doc. 47-1 ¶¶ 36-37), but again Plaintiffs ignore AIG actually did renew the policy after Plaintiffs brought this action. It was not until a year later (and incurring the claim and expenses noted in the Non-Renewal Notice) that AIG non-renewed.

9

Even if the court assumes Plaintiffs allege facts that plausibly suggest AIG's non-renewal was unreasonable, Plaintiffs do not allege facts to support AIG knew or should have known its non-renewal was unreasonable. AIG renewed the Hasans' policies in February 2017, after they filed this litigation. AIG then incurred expenses in this litigation and paid the claim under the fraud endorsement of the homeowners' policy. Plaintiffs recognize the parties previously considered loss history in their negotiations for renewal premiums. The policy expressly provided AIG could non-renew, and AIG complied with the notice provision of the policy and Colorado statute. Plaintiffs do not allege any misrepresentations, broken promises or knowledge on AIG's part that Plaintiffs were in a uniquely vulnerable position vis-à-vis homeowners insurance.

Plaintiffs argue their proposed claim is akin to the claim in *Ballow*. But in that case, the insurer broke its promises, among other things regarding the rates it would charge for future coverage. The insurer also misrepresented facts to induce the insureds to take a type of insurance that left them uniquely vulnerable to the insurer's later decision to break its promises. *Ballow,* 875 P.2d at 1358-59, 1363. Here, although Plaintiffs allege AIG insured several of Plaintiffs' properties for a significant amount of coverage, they do not allege either of those facts put them in a uniquely vulnerable position to support that AIG's non-renewal was unreasonable or that AIG knew it was unreasonable.

Plaintiffs also rely on *Barrera v. American National Property & Casualty Co.,* No. 12-cv-00413-WYD-MEH, 2013 WL 5426349 (D. Colo. Sept. 27, 2013). In that case, the insurer rescinded and declined to reinstate fourteen policies. In investigating a claim, the insurer discovered a member of the insured's household had a felony record, contrary to certifications in most of the applications. The court denied the insurer's summary judgment motion because

> the evidence could support a finding that ANPAC issued policies to the Barreras with no investigation, took $25,000 in premiums over a five-year period, and then abandoned the Barreras in the face of a catastrophic loss. It rescinded the policies without even contacting [the insurer's agent regarding whether he asked the underwriting questions] ... Moreover, ANPAC failed to notify the Barreras that cashing the premium refund checks may effect a mutual rescission, and then it sent letters urging the Barreras to cash the checks.

*Barrera,* 2013 WL 5426349 at *14. Plaintiffs do not allege any facts akin to the insurer's conduct in *Barrera*. AIG did not drop Plaintiffs as soon as they made a large claim; rather, AIG non-renewed well over a year after Plaintiffs filed this litigation. Plaintiffs also do not allege AIG attempted to mislead them with regard to the non-renewal.

Plaintiffs also cite *Johnson* in support of their claim. Much as in this case, in *Johnson* the court assumed without deciding the insurer's conduct was unreasonable, but found the claim conclusory as to knowledge of the unreasonableness. The claim did not identify facts indicating the insurer knew or should have known of the significance of its conduct. 653 F. Supp. 2d at 1145.

In addition, the court is doubtful that Plaintiffs' allegations of injury suffice. Plaintiffs allege they have incurred damages in the form of increased insurance premiums and inferior coverage. But Plaintiffs also allege AIG negotiated premiums every year "predicated upon the properties to be covered [and] the amount of coverage." Doc. 47-1 ¶ 36. Plaintiffs do not allege any promise regarding future premiums or levels of coverage upon renewal. Indeed, the homeowners' policy provides "[w]e may change the amount of coverage shown on the Declarations Page when the policy renews." Doc. 47-2 at 22 of 65 (Part II ¶ B.1.b.). No other provisions purport to limit the reasons why AIG could change either the premiums or the coverage. *See, e.g.,* Doc. 47-2 at 54-55 (the condominium owners' endorsement addresses certain reasons why premiums and coverage could change on renewal, but states Defendant is

11

not limited to those reasons). This stands in contrast to *Ballow*, for instance, in which the insurer promised a set rate for future tail coverage to induce them into the policies and then later charged substantially higher rates than promised. *Ballow*, 875 P.2d at 1359; *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 679 (Colo. 1994).

Thus the proposed allegations still do not suffice to nudge the claim across the line from conceivable to plausible. *Twombly,* 550 U.S. at 570. Plaintiffs allege facts consistent with retaliation, but not suggestive of it. In short, the court concludes that Plaintiffs' revised amendment remains futile because as pled, it is subject to dismissal.

### III. CONCLUSION

For each of the foregoing reasons, the court RECOMMENDS denying the renewed motion to amend.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: June 12, 2018.

BY THE COURT:

s/Mark L. Carman
United States Magistrate Judge